UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KATHERINE VEILLEUX, JENNIFER CHON, ROCKY COAST FAMILY ACUPUNCTURE PC, and JAMES TILTON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs<br><br>          v.<br><br>ELECTRICITY MAINE, LLC, PROVIDER POWER, LLC, SPARK HOLDCO, LLC, KEVIN DEAN and EMILE CLAVET<br><br>                    Defendants | CASE NO:  1:16-cv-571-LEW |

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Katherine Veilleux, Jennifer Chon, Rocky Coast Acupuncture PC, and James Tilton ("Plaintiffs") hereby move this Court to preliminarily approve the Settlement agreed to by the Parties in this Action.[1]

## I.  INTRODUCTION

Plaintiffs commenced this Action against Defendants Electricity Maine, LLC, Provider Power, LLC, Spark HoldCo, LLC, Kevin Dean, and Emile Clavet in 2016.  In their operative Third Amended Complaint, Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1964(d), the Maine Unfair Trade Practices Act ("MUTPA"), 5 M.R.S. § 207, and also assert claims of unjust enrichment and civil conspiracy. In a nutshell, Plaintiffs contend that Defendants engaged in deceptive conduct that caused

---

[1] Capitalized terms used in this motion are defined in the Settlement Agreement.

Plaintiffs to purchase electricity supply contracts from Electricity Maine and to pay more than they otherwise would have for that electric supply.

After three years of intensive litigation, and extended judicially facilitated negotiations, the Parties have reached a Settlement to resolve all claims brought by Plaintiffs on behalf of themselves and all class members similarly situated, and now present that Settlement to the Court for preliminary approval.

The terms of the Settlement are set forth in the Parties' Settlement Agreement, a copy of which is attached hereto as Exhibit 1. As Plaintiffs explain in detail below, the terms of the proposed Settlement are fair, adequate, and reasonable, and the proposed Notice Program provides the best practicable notice under the circumstances and comports with Fed. R. Civ. P. 23(c)(2). This motion is the first step in the settlement approval process. During this phase, the Parties request that the Court enter the proposed Preliminary Approval Order attached hereto as Exhibit 1-D, and make the following findings and decrees:

A. that it is likely to approve the terms of the Settlement under Fed. R. Civ. P. 23(e)(2);

B. that it will likely be able to certify the Settlement Class as defined herein for settlement purposes only;

C. that, for settlement purposes only, the Settlement Class is so numerous that joinder of all members is impracticable, there are questions of fact and law common to the Settlement Class and that those questions predominate over questions affecting only individual Settlement Class Members, Plaintiffs' claims are typical of the claims of the Settlement Class, and Plaintiffs will fairly and adequately protect the interests of the Settlement Class, and class treatment for purposes of settlement is superior to negotiation of separate individual settlements by Settlement Class Members.

D. appointing the four Named Plaintiffs as representatives of the Settlement Class;

E. appointing Thomas Hallett and Benjamin Donahue of Hallett, Whipple, Weyrens P.A. and Robert Cummins of The Cummins Law Firm, P.C. as Class Counsel;

F. approving the Notice Program set forth herein and approving the form and content of the Notices;

G.     approving the procedures and schedule for the Notice;

H.     approving Heffler Claims Group as the Settlement Administrator, with the responsibilities set forth in the Settlement Agreement;

I.     approving the procedure for Settlement Class Members to opt-out, thereby excluding themselves from the Settlement Class;

J.     approving the procedure for Settlement Class Members to object to the Settlement;

K.     scheduling a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Defendants' Counsel to determine whether to approve the Settlement and Class Counsel's application for attorneys' fees and costs and motion for the Named Plaintiffs' Enhancement Awards; and

L.     staying this Action, except such proceedings as may be necessary to complete and implement the Settlement, until the Effective Date of the Settlement has occurred.

Defendants have reviewed this motion and do not oppose the relief requested herein.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Electricity Maine is a competitive electricity provider ("CEP") created and operated pursuant to Maine law deregulating the retail sale of electric supply, which offers to consumers electricity supply contracts at a guaranteed price for a fixed term as an alternative to the "standard offer" price set annually by the Maine Public Utilities Commission ("MPUC") and available from the local transmission and delivery utility.

Electricity Maine was founded by Defendants Kevin Dean and Emile Clavet, owners of Defendant Provider Power, LLC, and began operating in 2011. Provider Power sold Electricity Maine to Defendant Spark HoldCo in August 2016. Plaintiffs allege in this suit that Defendants engaged in deceptive marketing practices that caused Plaintiffs to purchase electricity supply contracts from Electricity Maine and to pay more than they otherwise would have for that electric supply. Defendants deny these allegations.

Plaintiffs filed their original complaint on November 18, 2016. Since that time, Plaintiffs have amended their complaint three times. The operative complaint is the Third Amended Complaint (ECF No. 135), which asserts claims for alleged violations of RICO, 18 U.S.C. §§ 1962(c) and 1964(d); MUTPA, 5 M.R.S. § 207; unjust enrichment; and civil conspiracy.

The Parties conducted extensive discovery in this case. Over approximately fifteen months of discovery, the Parties took seventeen depositions and collectively produced approximately forty-five thousand documents. The Parties' experts submitted multiple reports, and all Parties propounded and responded to numerous sets of written discovery.

After the close of discovery in the class certification phase of the case, Plaintiffs filed their motion for class certification on March 25, 2019 (ECF No. 163), seeking to certify three subclasses consisting of hundreds of thousands of members with respect to Plaintiffs' RICO and MUTPA claims.[2] Defendants filed oppositions on May 10, 2019 (ECF Nos. 184 and 185), and also filed a motion to exclude Plaintiffs' expert evidence under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (ECF No. 183), which Plaintiffs opposed (ECF No. 205). Those motions are currently pending before the Court.

On July 1 and 2, 2019, the Parties attended a judicial settlement conference with Magistrate Judge Nivison, at the conclusion of which they agreed to a proposed settlement, subject to the satisfaction of certain conditions, including negotiation of a definitive settlement agreement and approval of the Settlement by the Court. On December 3, 2019, after further negotiations, the Parties executed a Term Sheet setting forth material terms for the Settlement of this Action. On March 19, 2020, the Parties executed a Settlement Agreement, which supersedes all prior

---

[2] Although their operative Third Amended Complaint contains four causes of action, Plaintiffs have only sought to certify under Fed. R. Civ. P. 23 their claims under RICO and MUTPA. The RICO and MUTPA claims are both asserted against Spark, Provider Power, Dean, and Clavet, but only the MUTPA claim is asserted against Electricity Maine.

agreements between them.  The Settlement Agreement, if finally approved by the Court, resolves all remaining issues and settles this Action in its entirety.  The Parties intend the Settlement Agreement, subject to the Court's approval, to bind Plaintiffs, Defendants, and all Settlement Class Members who do not timely request to be excluded from the Settlement.

### III.   SUMMARY OF THE SETTLEMENT TERMS

#### A.   The Settlement Class and Settlement Amount.

For settlement purposes only, Plaintiffs seek to certify a Settlement Class defined as:

> All residential and small business consumers who purchased electric supply from Electricity Maine during the Class Period from January 1, 2011 through and including November 30, 2019.

The Settlement Agreement excludes from the Settlement Class:  (a) the Defendants; (b) officers, directors, shareholders, and employees of Defendants; (c) parents, subsidiaries, and affiliates of any Defendant; (d) any entity in which a Defendant has a controlling interest; (e) any attorneys representing Defendants in this Action, and their employees; (f) any Judge to whom the Action is currently assigned or was previously assigned, and their staff; (g) Plaintiffs' counsel and their employees, who have waived any claims they may have against Defendants as members of the Settlement Class; and (h) any heirs, immediate family members, successors, and assigns of all such persons.

In consideration of the Settlement and Release given, each Claimant shall be entitled to a payment based on the total amount of electricity purchased by that Claimant from Electricity Maine during the Class Period, in an amount equal to $0.0023565 per kilowatt hour purchased (the "Calculated Payment").  The total amount paid to all Claimants, including the Named Plaintiffs' Enhancement Awards, in the aggregate, shall not exceed the Maximum Claimant Settlement Amount of $14,000,000.  In the event the aggregate total dollar value of all Claims submitted by

the Claimants, including the Named Plaintiffs' Enhancement Awards, exceeds the Maximum Claimant Settlement Amount, each Claimant's Calculated Payment shall be reduced and the Claimant shall receive, as a Calculated Payment, a pro rata share of that Claimant's share of the Maximum Claimant Settlement Amount.  Only one Calculated Payment is payable per eligible Electricity Maine account.

Electricity Maine also will waive payments of amounts owed to it by Settlement Class Members for electricity purchased during the Class Period that were more than one hundred twenty (120) days overdue as of November 30, 2019.

### B. The Notice and Claims Program.

The Settlement Administrator shall administer the Settlement, provide Notice, and process Claim Forms pursuant to requirements set forth in the Settlement Agreement.  Notice shall be made to the Settlement Class by Notice Packet sent via U.S. Mail containing a Long-Form Notice summarizing the terms of the Settlement, a Claim Form, and a return envelope addressed to the Settlement Administrator; by Email Notice; and by posting the Long-Form Notice and Email Notice on a website to be set up and maintained by the Settlement Administrator.  The Notices shall inform the Settlement Class Members of (a) the background of the Action and the essential terms of the Settlement; (b) the appropriate means for obtaining additional information regarding the Settlement and the Action; (c) the appropriate means to timely submit a Claim Form; (d) the appropriate information concerning the procedure for Opting-Out from the Settlement and filing an Objection to the Settlement, if they should wish to do so; and (e) that any relief to Settlement Class Members is contingent on the Court's final approval of the Settlement.

The Settlement Administrator and Parties shall have the right to contest the validity of Claims, and the Settlement Administrator may request additional information from Settlement

Class Members submitting Claims. If any fraud is detected or reasonably suspected, the Settlement Administrator may request further information from the Settlement Class Member or deny the Claim, subject to the supervision of the Parties and ultimate oversight by the Court. The Settlement Administrator shall approve or deny all Claims, and its decision shall be final and binding, except that Class Counsel and Defendants' Counsel may challenge the Settlement Administrator's decision by motion to the Court.

Not later than thirty (30) days after entry of the Preliminary Approval Order, the Settlement Administrator shall disseminate the Notice Packet and Email Notice. In order to qualify for a Calculated Payment, Settlement Class Members must timely deliver a properly completed Claim Form to the Settlement Administrator or submit a claim online through the Claims Portal during the Claim Period, which shall conclude ninety (90) days after the Notice Packet and Email Notice are sent.

### C. Opt-Outs and Objections.

Any Settlement Class Member, other than the Named Plaintiffs, may elect to be excluded from this Settlement by delivering written notice of the election to Opt-Out to the Settlement Administrator on or before the Opt-Out Deadline. Opt-Out requests must: (i) be signed by the Settlement Class Member who is requesting exclusion; (ii) include the full name, address, and phone number(s) of the Settlement Class Member; and (iii) expressly request to Opt-Out from the Settlement in the "Electricity Maine Class Action." No Opt-Out request will be valid unless all of the information described above is included and timely received by the Settlement Administrator by the Opt-Out Deadline.

Any Settlement Class Member who wishes to object to the Settlement must file a written Objection and notice of intention to appear before the Court at the Fairness Hearing and serve

copies on the Settlement Administrator, Class Counsel, and Defendants' Counsel.  To be heard at the Fairness Hearing, Settlement Class Members must make an Objection in writing and file it with the Clerk of the Court by the Objection Deadline.  Any Objection must (1) attach documents establishing, or provide information sufficient to allow the Parties to confirm, that the objector is a Settlement Class Member; (2) state whether it applies only to the objector, to a specific subset of the class, or to the entire class; (3) include a statement of such Settlement Class Member's specific Objection(s); (4) state the grounds for the Objection(s); (5) identify any documents such objector desires the Court to consider; and (6) provide all information requested on the Claim Form. Upon the filing of an Objection, Class Counsel and Defendants' Counsel may take the deposition of the objecting Settlement Class Member at an agreed-upon time and location, to obtain any evidence relevant to the Objection.

### D. Payment of Attorneys' Fees, Expenses, and Named Plaintiffs' Enhancement Award.

The Settlement Agreement requires Plaintiffs to file an application for the award of Attorneys' Fees and Costs, and a motion seeking approval of the Named Plaintiffs' Enhancement Award, within sixty (60) days after Notice is sent out. The Settlement Administrator shall cause any such application and motion to be posted on the Settlement Website.  Plaintiffs may seek an award of Attorneys' Fees and Costs in an amount that shall not, in the aggregate, exceed twenty-eight percent (28%) of the $14 million Maximum Claimant Settlement Amount, or $3,920,000.  Any award of Attorneys' Fees and Expenses shall be in addition to, and not part of or subject to, the amount paid to Class Members or the Maximum Claimant Settlement Amount.  Defendants reserve all rights to oppose any application for fees and costs by Plaintiffs.  Class Counsel will also submit to the Court a motion seeking approval of the payment of the Named Plaintiffs' Enhancement Award, in an amount which shall not to exceed Five Thousand Dollars ($5,000) per

Named Plaintiff, as compensation for Plaintiffs' efforts in bringing the Action and achieving the benefits of the Settlement on behalf of the Settlement Class.  Defendants have agreed not to oppose Plaintiffs' request for an Enhancement Award.

## IV.    ARGUMENT

### A.    The Court should Preliminarily Approve the Settlement Agreement.

"Compromises of disputed claims are favored by the courts." *William v. First Natl'l Bank*, 216 U.S. 582, 595 (1910); *see also Durett v. Housing Auth. Of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).  Settlement spares the litigants the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial resources.  In a class action, the "court plays the important role of protector of the [absent members'] interest, in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion. *See Protective Comm. For Indep. S'holders of TM Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-24 (1968).

#### 1.    Procedure for Court Approval of Proposed Class Settlement.

Court approval of a class settlement typically proceeds in two stages. *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-CV-00353-NT, 2015 WL 1206490, at *8 (D. Me. Mar. 17, 2015) (citing Manual for Complex Litigation (Fourth) § 21.632 (2011)).

First, the court reviews the proposed settlement and makes a preliminary determination on its fairness, reasonableness, and adequacy and directs notice to class members of the proposed settlement and date of the final fairness hearing. *Id.*  "At this initial stage, the court's role is limited to deciding 'whether the proposed settlement appears to fall within the range of possible final approval.'" *Michaud*, 2015 WL 1206490, at *8 (quoting *Trombley v. Bank of Am. Corp.*, No. 08-

cv-456-JD, 2011 WL 3740488, at *4 (D.R.I. Aug. 24, 2011)). "Generally, courts have recognized a presumption of fairness for settlements that are deemed to be the result of arm's-length negotiations following meaningful or sufficient discovery." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 44-45 (D. Me. 2005) (internal quotation marks omitted).

In the second stage, the court holds a fairness hearing where the parties must demonstrate that the proposed settlement is fair, reasonable, and adequate. *Michaud*, 2015 WL 1206490, at *8 (citing Manual for Complex Litigation § 21.634); *see also* Fed. R. Civ. P. 23(e)(2), *O'Connor v. Oakhurst Dairy*, No. 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018); *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014). In this District, there are a number of relevant factors courts consider for determining the fairness, reasonableness, and adequacy of a proposed class action settlement, including: (1) comparison of the proposed settlement with the likely result of litigation; (2) stage of the litigation and the amount of discovery completed; (3) reaction of the class to the settlement; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration. *Scovil*, 2014 WL 1057079, at *2; *see also O'Connor*, 2018 WL 3041388, at *2 (applying *Scovil* factors).[3]

### 2. Application of the *Scovil* Factors Here Demonstrates that the Proposed Settlement Likely "Fall[s] within the Range of Possible Final Approval."

Although consideration of the *Scovil* factors is not necessary until the final approval stage, their application to the terms of the proposed Settlement in this case demonstrates that it "fall[s] within the range of possible final approval." *Michaud*, 2015 WL 1206490, at *8.

---

[3] The *Scovil* factors encompass the "core concerns" set forth for the Court's consideration in Fed. R. Civ. P. 23(e)(2); *see id.* advisory committee's notes to 2018 amendment.

11828887.1

*First*, with respect to a comparison of the proposed Settlement with the likely result of litigation, Plaintiffs believe they would have prevailed on the merits of their claims had the Action been litigated to trial.  They recognize, however, that Defendants have a number of potentially valid defenses to those claims and would have mounted a strong and vigorous defense.  Further, even if the Court had granted the Plaintiffs' motion for class certification, Defendants would undoubtedly have requested the First Circuit to review that ruling under Fed. R. Civ. P. 23(f), or, failing that, sought to decertify the class at a later stage of the Action.  The proposed Settlement provides Settlement Class Members with a benefit without incurring the risks of the Court not certifying a class in this case or of Plaintiffs not prevailing on the merits of their claims.

*Second*, with respect to the stage of the litigation and the amount of discovery completed, this case has been pending for well over three years and all Parties conducted significant discovery over a fifteen-month period.  The Parties conducted seventeen depositions, produced tens of thousands of pages of documents, retained multiple expert witnesses to make complex statistical arguments on relevant causation and damages issues, employed private investigators, and took discovery of third parties, as well.  Plaintiffs' motion for class certification was pending at the time the Parties entered into the Settlement Agreement.  Thus, Plaintiffs' Counsel conducted a thorough investigation of Plaintiffs' claims, as well as the recoverable damages available to the class if Plaintiffs were to prevail, to assess the fairness of the Settlement.

*Third*, the Court will only be able to evaluate the reaction of the class to the Settlement after completion of the Notice program and Claims Process.  Accordingly, this factor is neutral.

*Fourth*, Plaintiffs seek to appoint Thomas Hallett and Benjamin Donahue of Hallett, Whipple & Weyrens, P.A., and Robert Cummins of The Cummins Law Firm, P.C. as Class Counsel.  For over three years, Plaintiffs' counsel has zealously investigated and litigated this case.

To date, counsel have committed significant resources to pursuing Plaintiffs' claims; retaining multiple expert witnesses; conducting extensive discovery; and litigating multiple challenges to the legal sufficiency of Plaintiffs' claims, the scope of discovery, the admissibility of Plaintiffs' expert testimony, and their Motion for Class Certification. (ECF No. 163-14; Donahue Dec. ¶¶ 3-4). Collectively, Plaintiffs' counsel has extensive trial experience in this District and others, including experience serving as class counsel in numerous consumer class actions. (ECF No. 163-15, Hallett Dec. ¶¶ 3-6; ECF No. 163-16, Cummins Dec. ¶¶ 11-12).

*Fifth*, the Settlement was reached as a result of good-faith negotiations and in the absence of collusion. As noted above, the Parties attended a judicial settlement conference with Magistrate Judge Nivison for two full days, where counsel with the assistance of the Court vigorously negotiated the terms of the Settlement. *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) (when "the parties have bargained at arms'-length, there is a presumption in favor of the settlement"). To date, the Parties have no agreement regarding attorney fees and costs other than Class Counsel's agreement not to seek a fee exceeding twenty-eight percent of the $14,000,000 maximum settlement amount.

*Sixth*, with respect to prospects of the case, including risk, complexity, expense, and duration, further prosecution of this case would be difficult, lengthy, and expensive for all Parties involved. This case involves a number of complex factual and legal issues, many of which are addressed in detail in the Parties' briefing on Plaintiffs' motion for class certification. If the Settlement is not approved, the Parties would face protracted litigation, including motions for summary judgment, trial, potential appeals – all of which could take many months and result in substantial legal fees, expenses, and judicial resources.

For the foregoing reasons, Plaintiffs respectfully submit that the standards for preliminary approval of the Settlement are satisfied for purposes of Fed. R. Civ. P. 23(e).

**B.    Rule 23's Requirements for Certification of a Settlement Class are Satisfied.**

It is well established that a class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of the class certification issue. *See, e.g.*, *O'Connor,* 2018 WL 3041388, at *7 (certifying a class for the purposes of settlement). In deciding whether it will likely be able to certify a settlement class, the Court must consider the same factors that it would consider in connection with a proposed litigation class – *i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied – except the Court need not consider manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See id.* at *5 & n.4; *see also Amchem Products, Inc.*, 521 U.S. at 620.  Applied here, Plaintiffs submit that all the requirements for certification under Federal Rule 23 are satisfied.

### 1.    Numerosity

In this case, the proposed Settlement Class consists of hundreds of thousands of members. Their joinder is impracticable.  Thus, the Rule 23(a)(1) requirement is met.  *See O'Connor,* 2018 WL 3041388, at *5.

### 2.    Commonality

The commonality element requires that class members' claims "must depend upon a common contention" and one "that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Michaud*, 2015 WL 1206490, at *2 (quoting *Wal-Mart v. Dukes*, 564 U.S. 338 (2011)).  Here, commonality is satisfied because there are multiple questions of law and

11828887.1

fact that center on Electricity Maine's alleged classwide practices relating to the advertising and marketing of its electric supply contracts.

### 3. Typicality

Named Plaintiffs, like other class members, claim to have been injured by enrolling with Electricity Maine for their electric supply based on its deceptive marketing and paying more for electricity than they otherwise would have as a result. The interests of the Named Plaintiffs align with the members of the Settlement Class they seek to represent. Accordingly, the typicality requirement is satisfied. *Michaud*, 2015 WL 1206490, at *3.

### 4. Adequacy

There are three factors to consider when determining whether Rule 23(a)(4) has been met. "First, plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Second, the representative plaintiff cannot have interests antagonistic to the class. Third, the representative party and the representative attorney must be expected to prosecute the action vigorously." *O'Connor*, 2018 WL 3041388, at *6. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between Named Plaintiffs and the Settlement Class, and Plaintiffs have retained competent counsel to represent them and the Settlement Class. Plaintiffs' Counsel have dedicated substantial resources to the prosecution of this Action and have vigorously and competently represented the interest of Settlement Class Members in the Action.

### 5. Predominance and Superiority

Rule 23(b)(3) is satisfied, for settlement purposes only, because the common legal and alleged factual issues relevant to the Settlement Class, as opposed to the three litigation subclasses proposed, predominate over individualized issues, and resolution of the common issues for thousands of Settlement Class Members in a single, coordinated settlement proceeding is superior

to thousands of individual lawsuits addressing the same legal and factual issues. With respect to predominance, Rule 23(b)(3) requires that "a sufficient constellation of common issues bind[] class members together." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). The predominance and superiority requirements in this case are satisfied for settlement purposes because the Settlement is structured in a manner that permits the identification of Settlement Class Members and the calculation of settlement payments without the need to negotiate and resolve individualized issues.

### C. Appointment of Class Counsel.

Thomas Hallett and Benjamin Donahue of Hallett, Whipple, Weyrens P.A., and Robert Cummins of The Cummins Law Firm, P.C. should be appointed as Class Counsel in this case. Rule 23(g) identifies four criteria the Court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment.

Plaintiffs' Counsel meet these criteria. Plaintiffs' Counsel have performed substantial work in prosecuting this case and negotiating the Settlement of Named Plaintiffs' and Settlement Class Members' claims. (ECF No. 163-14, Donahue Dec. ¶¶ 3-4). Further, Plaintiffs' Counsel have substantial experience prosecuting and settling class actions and other complex litigation, and

the attorneys involved in this matter are well qualified to represent the interests of the Settlement Class. (*See* ECF No. 163-15, Hallett Dec. ¶¶ 3-6; ECF No. 163-16, Cummins Dec. ¶¶ 11-12).

### D. Appointment of Named Plaintiffs as Class Representatives.

In this case, all four class representatives have expressed a commitment to litigating this case and fairly representing the best interests of Settlement Class Members. None have conflicts with the Settlement Class or each other. During the course of this proceeding, they have appeared for depositions, responded to discovery, and understand that, as class representatives, they must act in the best interests of the class and participate in this case for the right reasons.[4] (ECF No. 164-4, Veilleux Dep. 14:11-12; ECF No. 163-5, Chon Dep. 13:20-15:13; ECF No. 163-9, Stein Dep. 12:16-17-2; ECF No. 163-13, Tilton Dec. ¶¶ 9-12).

### E. The Proposed Class Notice and Claim Forms are Appropriate.

The Notices and Claim Form fully comply with due process and Fed. R. Civ. P. 23. Rule 23(c)(2)(B) requires that a notice must provide:

> The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

---

[4] Rocky Coast is a corporate entity controlled entirely by Jason Stein. Stein enrolled his business and household accounts with Electricity Maine at the same time. (ECF No. 163-9, Stein Dep. 60:14-22).

Here, the Long-Form Notice, Email Notice, and Claim Form contain all of the above-referenced information for Settlement Class Members.  (Exhibits 1-A, 1-B, and 1-C).  They are written in plain English and are organized and formatted to be as clear as possible.  Moreover, the Claims Program is comprehensive, and "reasonably calculated to reach absent class members." *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004).  Prior to sending any Notice by U.S. Mail, the Settlement Administrator shall utilize the USPS National Change of Address Database and address tracing through Lexis Nexis to ensure that all Notices are sent to Settlement Class Members' current addresses.  If a Notice Packet is returned as undeliverable, the Settlement Administrator shall attempt to contact that Settlement Class Member by telephone and provide an additional Notice.

### F. The Court should Schedule a Final Approval Hearing.

The Court should schedule a Final Approval Hearing to determine whether final approval of the Settlement is proper.

## V. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court find that it is likely to approve the terms of the Settlement under Fed. R. Civ. P. 23(e)(2) and enter the proposed order attached hereto as Exhibit 1-D.  Plaintiffs further request that the Court stay all further proceedings in the Action, except such proceedings as may be necessary to complete and implement the Settlement, until the Effective Date of the Settlement has occurred.

Dated this 19th day of March, 2020

/s/ *Thomas F Hallett*
Thomas F. Hallett
Benjamin N. Donahue
HALLETT WHIPPLE WEYRENS, P.A.
6 City Center, Suite 208
Portland, Maine 04101
(207) 775-4255
thallett@hww.law
bdonahue@hww.law

Robert P. Cummins
The Cummins Law Firm, P.C.
Two Canal Plaza
P.O. Box 4600
Portland, ME  04112-4600
(207) 553-4712
rpc@cumminslawfirm.com

*Attorneys for the Plaintiffs*

11828887.1