UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KATHERINE VEILLEUX, JENNIFER CHON, ROCKY COAST FAMILY ACUPUNCTURE, P.A. and JAMES TILTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>ELECTRICITY MAINE, LLC, PROVIDER POWER, LLC, SPARK HOLDCO, LLC, KEVIN DEAN and EMILE CLAVET<br><br>Defendants | CASE NO:  1:16-cv-571-LEW |

**PLAINTIFFS' FED. R. CIV. P. 23(h) REQUEST FOR AN AWARD
OF ATTORNEYS' FEES AND COSTS**

NOW COME Plaintiffs and Class Counsel and, pursuant to Fed. R. Civ. P. 23(h) and the Court's May 13, 2020, Order Approving Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 235), move for an award of attorney fees and non-taxable costs.  This Motion is supported by the points and authorities below; the Joint Declaration of Benjamin Donahue, Thomas Hallett, and Robert Cummins; the Declaration of James Prutsman; and the activities and events in this proceeding to date.

I.    INTRODUCTION

This fee request arises from a consumer class action settlement involving competitive electricity supplier, Electricity Maine, LLC ("Electricity Maine"); its current and former parent companies, Spark HoldCo, LLC ("Spark") and Provider Power, LLC, respectively; and its founders, Kevin Dean and Emile Clavet.  Over the course of nearly four years, Class Counsel—Attorneys Thomas Hallett and Benjamin Donahue of Hallett Whipple Weyrens ("HWW"); and

1

Attorney Robert Cummins of the Cummins Law Firm, P.A.—investigated and litigated claims of consumer fraud and deceptive conduct against Defendants, ultimately reaching an agreement to resolve Plaintiffs' and Class Members' claims, certify a settlement class, and allocate $14,000,000 to benefit Settlement Class Members, along with other relief.  For their effort and commitment on behalf of Plaintiffs and Settlement Class Members, Class Counsel now seek an award of attorney fees of $3,200,000, or 23 percent of the cash benefit available to Settlement Class Members and 18 percent of the total benefit;[1] and $159,206.99 for reimbursement of the non-taxable costs paid on behalf of Plaintiffs and Settlement Class Members over the course of the litigation.  Defendants oppose Class Counsel's fee and expense requests.

II.     ARGUMENT

      A.     Class Counsel's Fee Request is Fair, Reasonable, and Appropriate

The First Circuit has endorsed two common methods for calculating attorney fees awarded at the conclusion of a Rule 23 class action—(1) awarding class counsel a percentage of the common benefit or fund made available to class members, known as the "percentage of the fund" method, or (2) using counsel's lodestar, or some multiple thereof, to determine a reasonable fee. *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995).  In most cases, the percentage-of-the-fund calculation is strongly preferred, with the lodestar occasionally used to "cross-check" the reasonableness of the proposed fee. *See, e.g.*, *O'Connor v. Oakhurst Dairy*, 2018 U.S. Dist. LEXIS 102244, *10 (D. Me. June 19, 2018) ("The First Circuit has approved the [percentage-of-the-fund] method as the prevailing approach.").

---

[1] The total benefit obtained for Settlement Class Members, discussed infra at 7 includes all the fees and expenses that Plaintiffs would normally pay and that benefit Settlement Class Members, but that Defendants have agreed to pay in this case.  *See, e.g., Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016) ("Total benefit to the class . . . includes the benefit to the class, the attorney's fees, and may include costs of administration.").

In the First Circuit, courts using the percentage-of-the-fund or benefit approach typically consider a fee award between twenty and thirty percent reasonable, with twenty-five percent as the benchmark. *See Bedzek v. Vibram USA, Inc.*, 79 F. Supp. 324, 350 (D. Mass. 2015) ("The plaintiffs' request for 25% of the settlement fund falls squarely within what is recognized in the circuit as the range of reasonable [percentage-of-the-fund] amounts."). To bring some context to a requested fee, courts frequently start near the benchmark and then analyze a number of factors to ensure the reasonableness of any awarded fee. These factors differ from court to court, but the focus is generally on the result that class counsel achieved for the class; fees awarded in similar cases; class counsel's skill and work product; the risk and financial burden that class counsel undertook to achieve the result; whether the fee was negotiated at arms-length; and the reaction of the Class. *See id.* (examining the skill of class counsel, the work performed and litigation history, the relief afforded by the settlement, and the reaction of the class).

When, like here, the common benefit to class members is made available through a claims-made process, the question arises of what value a court should assign to the total benefit provided to the class by class counsel—a percentage of the total amount made available to class members, or of the actual amount claimed by class members. At least one court has explicitly held that the latter should control. *See, e.g.*, *Ferrer v. CareFirst, Inc.*, 2019 U.S. Dist. LEXIS 186969, D.D.C. Sept. 30, 2019). But the vast majority of courts, including the U.S. Supreme Court, conclude that the entire aggregate value made available to the class should serve as the benchmark—regardless of whether every class member makes a claim. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-481 (1980). The reason for looking to the total benefit available is that

> [a class member's] right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the

> creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery.

*Id.* Most courts follow this reasoning. *See, e.g.*, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class."); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("[A]ttorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund."); *Waters v. Int'l. Precious Metals Corp.*, 190 F.3d 1291, 1295-97 (11th Cir. 1999) ("Contrary to defendants' assertion, no case has held that a district court must consider only the actual payout in determining attorneys' fees."); *Moulton v. United States Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) ("The objectors focus on the amount *claimed* rather than the amount *allocated*."); *see also* Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 14:6, at 570 (4th ed. 2002) (discussing how *Boeing Co.* settled the question of whether class counsel are entitled to benchmark their fee on funds potentially available to be claimed, regardless of the amount claimed). This holds true even when a settlement does not create a true "fund" escrowed for class members' benefit or when a defendant simply agrees to accept liability for all claims made.[2] *See Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 n.2 (11th Cir. 2015) ("A claims-made settlement is the functional equivalent of a common fund settlement where

---

[2] For the same reasons, an award of attorney fees paid directly by a defendant—instead of indirectly from the common fund itself—does not prevent the application of the percentage-of-the-benefit approach and at least some portion of awarded attorney fees should be included as part of the common benefit to the class. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996) (concluding that attorney fees were a benefit to the class and the district court abused its discretion in failing to apply the percentage-of-the-benefit approach); *Zink* v. *First Niagara Bank, N.A.*, 2016 U.S. Dist. LEXIS 179900, at **20-21 (W.D.N.Y. Dec. 29, 2016) ("While it may seem curious to include separately-paid attorney's fee's as a benefit to the class when they have no entitlement to them, the reason is that if the fees were not paid separately, then they would be paid out of the amounts otherwise available to the class, thereby diminishing the class recovery."). Fees and expenses are normally part of the common fund and class counsel should be rewarded, not punished, for negotiating their fee separately from class members' interests.

the unclaimed funds revert to the defendant; indeed, the two types of settlements are fully synonymous.") (Quotation marks and citations omitted)); *Zink v. First Niagara Bank, N.A.*, 2016 U.S. Dist. LEXIS 179900, at **19-20 (W.D.N.Y. Dec. 29, 2016).

Understandably, some courts express concern that class counsel will negotiate an illusory "benefit" to increase their fee while creating a settlement that provides little to class members. *See In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 406-09 (D. Mass. 2008) (criticizing the use of percentage-of-the-fund approach in claims made settlements, but nonetheless finding class counsel's fee request reasonable). But when, on the other hand, class counsel engages in a hard-fought, risky, and successful effort for class members by creating a legal right for each class member to obtain relief, courts are hesitant to make counsel's contingent fee award also contingent of class members making claims. Such a formula would discourage lawyers from taking certain cases that otherwise serve as an effective deterrent to wrongful conduct; and would punish lawyers who take extraordinary risks and invest significant resources for class members' benefit. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y 2008) ("Courts have also recognized that, in addition to providing just compensation, awards of attorney's fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.").

The logical solution—and that adopted by most courts—is to consider the outcome of the claims process as relevant to a court's reasonableness analysis; but to use total relief available to class members as the benchmark from which a percentage-of-the-fund award is anchored. In the end, the touchstone of a court's analysis is reasonableness and considering both the total benefit made available to class members and the total amount actually claimed will achieve that result.

Taking such an approach will result in a reasonable fee here. Class Counsel's requested fee award of $3.2 million—or twenty-three percent of the cash benefit made available to class members—is fair and appropriate, and at the low end of the presumptively-reasonable 20 to 30 percent range. Nearly all the factors in this case support an award at the upper end of the range— the case was hard-fought, complex, and high risk; Class Counsel invested significant time and committed substantial resources to benefit Settlement Class Members; the settlement itself provides real relief; and Class Counsel's lodestar supports their request.

Class Counsel, however, acknowledge the realities of any claims-made process. And here, although the claims process—only two-thirds complete—is already a success with over 43,000 claims received by the settlement administrator and no objections (Prutsman Dec. ¶¶ 8-9), Class Counsel submit that any fee award should not exceed the direct monetary benefits distributed to Settlement Class Members through the claims made process and estimated $360,000 in forgiven outstanding accounts receivable. At the time of this filing, though, Class Counsel's request of $3,200,000 already falls below that benchmark and given the strong response to the settlement, significantly more claims are likely before the claims period concludes on September 10, 2020.

    1.    Class counsel obtained an exceptional result for Settlement Class Members

On July 1 and 2, 2019, the parties participated in a two-day judicial settlement conference with the assistance of Magistrate Judge Nivison. At approximately 6:30 PM on the second day, they reached the outline of an agreement, which was reduced to a terms sheet on December 3, 2019.[3] (Joint Dec. ¶ 16). The settlement secures funding of up to $14,000,000 to compensate Settlement Class Members—individuals and small businesses who were Electricity Maine customers between January 1, 2011, and November 30, 2019—and debt forgiveness for Class

---

[3] Between July and December, Defendants were negotiating contribution issues amongst themselves. (Joint Dec. ¶ 16).

6

Members whose Electricity Maine accounts are more than 180 days past due as of November 30, 2019. Defendants represented during mediation that this amount was $360,000 but have not provided an update prior to this filing. Additionally—and although the parties have no agreement regarding attorney's fees beyond the condition that any fee and expense award cannot collectively exceed twenty-eight percent—the settlement provides that any fee award will be in addition to, and will not detract from, the $14,000,000 made available for Class Members' benefit. The Settlement Agreement also requires that Defendants bear the costs of administrating the settlement. The total benefit to the Settlement Class breaks down as follows:

- $14,000,000 available on a claims-made basis;
- At least $360,000 of forgiven debt for Electricity Maine accounts receivable that are over 180 days past due;
- Administrative costs paid by Defendants, estimated at $600,000;
- Attorney fees paid by the Defendants and to be determined by the Court;
- Litigation costs paid by Class Counsel of $159,206.99.

(Joint Dec. ¶ 17).

To be sure, Plaintiffs' damages models—assuming an airtight liability case against all Defendants—show that the alleged harm to Plaintiffs and Settlement Class Members is far beyond what this settlement provides. (ECF No. 163-2 at 32 (Plaintiffs' proposed damages model)). As this case progressed, however, it became clear that neither Electricity Maine—a business whose only real asset is its dwindling customer base—nor the two individual Defendants could never satisfy a judgment or settlement that would make Plaintiffs and Settlement Class Members whole. (Joint Dec. ¶ 18). By naming Electricity Maine's parent company, Spark, as a defendant, however,

7

and successfully opposing Spark's dispositive motions, Class Counsel was able to secure a substantial recovery that would otherwise not have benefited Settlement Class Members.

Settlement Class Members' reaction to the settlement is overwhelmingly positive. To date, over 43,000 Settlement Class Members have submitted claims to the settlement administrator, 0 have objected, and only 37 have requested exclusion. (Prutsman Dec. ¶¶ 8-9).

2.  Fee awards from similar consumer class actions support Class Counsel's requested fee

Courts in the First Circuit and elsewhere universally consider an award between 20 and 30 percent of the common benefit as the benchmark of a reasonable fee request. *See, e.g.*, *Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.)*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) ("An empirical study of federal class action fee awards in 2006 and 2007 found that nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *Ark. Teacher Ret. Sys. v. State St. Bank & Trust Co.*, 2020 U.S. Dist. LEXIS 33552, *149 (D. Mass. Feb. 27, 2020) ("An award of 20% of the common fund is at the low end of the range generally presumed reasonable.").

Class Counsel's requested fee here is at the lower end of this spectrum and on par with other class action fee awards in this District and in the First Circuit. *See, e.g.*, *O'Connor*, 2018 U.S. Dist. LEXIS at *10 (finding a fee of 33 percent reasonable in a hard-fought, complex, and risky case); *Bezdek*, 79 F. Supp. 3d at 351 (concluding that a fee of 25 percent of the common benefit was reasonable in a claims-made case).

3.  Class counsel's skill and work product, and the risk and financial burden undertaken in prosecuting this case

Before this case began, Class Counsel had serious trepidations about the perils of prosecuting a high-risk contingent fee class action against numerous well-funded defendants.

8

Expert witness fees and costs were projected to easily reach six figures—a significant expense for a small firm—and the danger that thousands of contingency fee hours would not be paid hung over the heads of the six lawyers that made up our firm during the pendency of this case. (Joint Dec. ¶ 5). We nevertheless agreed to represent the Plaintiffs for two reasons. First, our initial investigation uncovered what appeared to be an unmitigated large-scale fraud. (Joint Dec. ¶ 8). And second, we were incentivized by the potential for a contingent fee at the end of the tunnel. (Joint Dec. ¶¶ 6-7).

In summer 2016, Class Counsel began investigating Electricity Maine, the rates it charged customers, and its automatic renewal process. (Joint Dec. ¶ 8). At that time, there was wide-spread reporting on the competitive electricity industry in Maine—and in particular, on Electricity Maine—resulting from consumer complaints, but there had been no meaningful response by regulators, or private suits seeking redress—nor has there been since this case commenced. Class Counsel began their investigation by analyzing data disclosed to regulators and interviewing Electricity Maine customers. (Joint Dec. ¶ 8). Later, they involved private investigators to conduct more wide-spread information gathering. (Joint Dec. ¶ 8). After Plaintiffs Katherine Veilleux and Jennifer Chon retained Class Counsel in the early fall, extensive pre-filing work took place. (Joint Dec. ¶ 9). Class Counsel retained expert witnesses to develop damages and causation models, researched and briefed the complex legal issues anticipated to arise in this case, and drafted the initial complaint. (Joint Dec. ¶ 9).

Plaintiffs' filed suit on November 18, 2016. From the outset, this case was aggressively defended. Defendants—represented by highly experienced counsel from two of the larger law firms in Maine—fought tooth and nail to dispose of Plaintiffs' case by challenging the legal sufficiency of their allegations on three different occasions; seeking to compel Plaintiffs claims to

9

arbitration; limiting Plaintiffs access to information and witnesses in discovery; and attacking Plaintiffs expert opinions. (Joint Dec. ¶ 11). In short, this was a hard-fought and adversarial case that settled only after the parties fully briefed Plaintiffs' Motion to Certify and with the assistance of a two-day settlement conference with Magistrate Judge John Nivison. Over the course of nearly four years, major litigation events include—

- Plaintiffs' Emergency Motion for Protective Order. (ECF No. 13). When Class Counsel learned that Electricity Maine was circulating updated terms of service containing arbitration agreements and class-action waivers shortly after the filing of this case, Plaintiffs asked the Court to use it's power under Fed. R. Civ. P. 23(d) to protect putative class members. After oral argument, the parties entered into a stipulation whereby Electricity Maine agreed not to enforce its arbitration agreements retroactively. (ECF No. 32);

- Challenges to the legal sufficiency of Plaintiffs' First and Second Amended Complaints: Spark's first Motion to Dismiss (ECF No. 30), followed by Plaintiffs' Motion for Leave to Amend (ECF No. 37) and Spark's opposition on futility grounds. (ECF No. 38). These filings involved extensive supplemental briefing on complex civil RICO issues. (ECF Nos. 44, 46, 48);

- Seventeen depositions. (Joint Dec. ¶ 12).

- An exchange of over 45,000 documents between the parties. Included in this count are massive spreadsheets containing millions of data points regarding putative class members electricity usage. Plaintiffs' experts analyzed this data to develop causation and damages opinions. (ECF No. 163-2).

- Interrogatories propounded by both sides. (Joint Dec. ¶ 12).

- Defendants' attempts to compel parts of the case to arbitration. (ECF No. 145).

- Numerous discovery disputes as Defendants' sought to limit Plaintiffs' ability to collect information and conduct depositions. (ECF Nos. 78, 105, 122, 177).

- An extensive investigation into Defendants' door-to-door sales tactics that occurred during the pendency of this case. (ECF No. 83).

- Challenges to the legal sufficiency of Plaintiffs Third Amended Complaint, including Defendant Electricity Maine and Sparks' opposition to Plaintiffs' Motion for Leave (ECF No. 89) and Motion for Judgment on the Pleadings (ECF No. 91).

- Plaintiffs' Motion to Strike Defendants' attempt to enforce an arbitration agreement without filing a Motion to Compel. (ECF No. 95).

- Defendants' challenges to Plaintiffs' expert testimony including their attempt to prevent Plaintiffs' from filing a rebuttal report (ECF No. 105), their Motion to Strike the rebuttal report (ECF No. 109)

- Extensive pre-trial preparations for an evidentiary hearing scheduled on Defendants Motion, including numerous pre-trial filings (ECF Nos. 123-28) and extensive witness preparation. The need for a hearing was mooted when the Court ruled on Plaintiffs' Motion for Leave to Amend and Defendants pending dispositive motions. (ECF No. 130).

- Plaintiffs Motion to Certify. (ECF No. 163).

- Defendants' Motion to Exclude. (ECF No. 183).

Throughout the litigation, Class Counsel made extraordinary efforts to conduct an extensive investigation, produce top-quality work product, and properly steer the case towards class certification. Class Counsel succeeded in keeping Plaintiffs' allegations against all Defendants intact and fended off Defendants attempts to limit the scope of discovery and attacks on their experts, eventually positioning the case for class certification and settlement after filing an extensive Motion to Certify. (ECF No. 163).

Class Counsel's efforts and commitment to this case are reflected in their lodestar; the $159,206.99 in expenses paid out-of-pocket; the Court's rulings over the course of four years, which are largely in Plaintiffs' favor (ECF Nos. 78, 105, 122, 130, 140, 177); and a settlement that provides real benefits to Settlement Class Members.

5. Lodestar cross-check confirms the reasonableness of the requested fee

Class Counsel submits a total lodestar amount of $1,353,127. (Joint Dec. ¶¶ 26-27). Attorney Cummins spent 834.5 hours working on this case at an hourly rate of $500, which, although above average for fees normally charged in the District of Maine, is reasonable considering his experience and practice since 1962. (Joint Dec. ¶ 4). Attorneys Hallett and

11

Donahue, along with other attorneys and paralegals at HWW performed 3205.1 hours of work through June 31, 2020. (Joint Dec. ¶ 23). Attorney Hallett's billing rate is currently $450 per hour, and $245 for Attorney Donahue. (Joint Dec. ¶ 20). Given the variations in Attorneys Hallett and Donahue's billing rates since this case was filed, however, they have utilized a blended hourly rate of $300 to calculate their loadstar. (Joint Dec. ¶¶ 20, 22). Litigation paralegal work is billed at $100. These rates are within what this Court has found reasonable in other cases. *See TD Bank, N.A. v. Estate of Woodman*, 2019 U.S. Dist. LEXIS, at *10-12 (D. Me. Jun. 21, 2019) (applying hourly fee awards of $367.50 for exceptionally experienced counsel; $315 for most highly experienced counsel; $262.50 for most reasonably experienced counsel; $183.75 for associates; and $99.75 for paralegals).

Cross checking Class Counsel's requested fee returns a lodestar multiplier of 2.36 percent which is well within the range of reasonableness. *See, e.g.*, *New Eng. Carpenters Health Benefits Fund v. First Databank*, 2009 U.S. Dist. LEXIS 68419, at *10 (D. Mass. Aug. 3, 2009) (approving a fee that represented a multiplier of 8.3 times lodestar).

B.  Class Counsel's Expenses are reasonable and appropriate

At the conclusion of a Rule 23 class action, a court may reimburse class counsel for reasonable costs expended in furtherance of the litigation. *In re Fidelity/Micron Secs. Litig. v. Fidelity Magellan Fund,* 167 F.3d 735, 737 (1st Cir. 1999) ("[L]awyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."). Here, Class Counsel seeks reimbursement of $159,206.99 in expenses, broken down as:

| CATEGORY | AMOUNT |
|---|---|
| Service Fees | $ 646.97 |
| Filing Fees | $ 400.00 |
| Copies | $ 1,057.25 |
| Private Investigator Fees | $ 4,950.00 |
| Court Reporters | $ 6,996.63 |
| Postage | $ 23.54 |
| Expert Witness Fees | $ 143,465.50 |
| Witness Fees | $ 839.13 |
| Attorney Mileage | $ 347.35 |
| Research Materials | $ 10.00 |
| Electronic Data Storage | $ 443.62 |
| Meals at depos | $ 27.00 |

These expenses are reasonable and of the type ordinarily incurred in litigation. (Joint Dec. ¶ 27). The most significant expense, Plaintiffs' expert witness, a Ph.D economist and his research firm, were retained to analyze Defendants' business practices, pricing, and their impact on consumer behavior. Plaintiffs' experts conducted extensive analysis and issued reports (ECF No. 163-2), which became a focal point of this litigation and contributed significantly to the merits of Plaintiffs' Motion to Certify.

IV.   CONCLUSION

For all of these reasons, Plaintiffs and Class Counsel respectfully request that the Court enter an order in the docket granting their requests for attorney fees and expenses pursuant to Fed. R. Civ. P. 23(h).

Dated August 11, 2020 in Portland, Maine.

Respectfully submitted,

*/s/ Benjamin N. Donahue*

*/s/ Thomas F. Hallett*

Thomas F. Hallett
Benjamin N. Donahue
*Attorney for Plaintiffs and Class Members*

HALLETT WHIPPLE WEYRENS
6 City Center, Suite 208
P.O. Box 7508
Portland, ME 04112-7508
PH: 207-775-4255
*thallett@hww.law*
*bdonahue@hww.law*

## **CERTIFICATE OF SERVICE**

I, Benjamin N. Donahue, Esq., certify that on August 11, 2020 I electronically filed PLAINTIFFS' FED. R. CIV. P. 23(h) REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND COSTS with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to counsel of record.  I also certify that I provided a copy of this filed to the Heffler Claims Group, who will post it on the settlement website, www.veilleuxsettlement.com

Dated August 11, 2020 in Portland, Maine.

Respectfully submitted,

*/s/ Benjamin N. Donahue*

Benjamin N. Donahue
*Attorney for Plaintiffs and Class Members*
HALLETT WHIPPLE WEYRENS
6 City Center, Suite 208
P.O. Box 7508
Portland, ME 04112-7508
PH: 207-775-4255
*thallett@hww.law*